UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ECF case: GEL

-------------------------------------------------------------x

Alan David Wyllins,

        Plaintiff,

-against-

Rochester Midland Corporation, and Mitchell Lask,
Harry Grassel and Elizabeth Weidelich, Individually

        Defendants.

-------------------------------------------------------------x

Index No.: 07 CIV 6801

COMPLAINT
AND JURY DEMAND

Plaintiff Alan David Wyllins, ("Plaintiff"), by his attorney Anne Donnelly Bush, hereby alleges, upon information and belief against the Defendants Rochester Midland Corporation, Mitchell Lask, Harry Grassel, and Elizabeth Weidelich (collectively "Defendants") as follows:

## (I) INTRODUCTION

1.     Plaintiff brings this action against the Defendants for disability discrimination in the terms and conditions, and privileges of his employment pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12101, et seq., ("ADA").

2.     Plaintiff brings this action for violations of the Family Medical Leave Act, 29 U.S.C.S. § 2601 et seq., ("FMLA.")

3.     Plaintiff brings this action pursuant to the New York State Human Rights Law ("NYSHRL"), in violation of § 296(1) (a) et seq., of the New York State Human Rights Law, and the N.Y.C. Admin. Code, in violation of § 8-107(1)(a) et seq., of the New York City Administrative Code, seeking redress for, inter alia, Defendants' violating Plaintiff's civil rights as guaranteed by the applicable New York State and City civil rights law.

1

## (II) JURISDICTION

4.    Jurisdiction is conferred upon the Court by 28 U.S.C. §§ 1331, 1343 and 1367.

## (III) VENUE

5.    Venue lies in the Southern District of New York in that the unlawful actions complained of and the records relevant to such practices are maintained and administered within this district.

6.    All conditions precedent to the institution of this suit have been satisfied.

## (IV) THE PARTIES

7.    Plaintiff Alan David Wyllins ("Plaintiff") is a resident of New York, New York.

8.    Plaintiff was an eligible employee as that term is understood within the ADA and the FMLA.

9.    Defendant Rochester Midland Corporation ("RMC"), a private corporation that is located at 333 Hollenbeck Street, Rochester, New York 14621.

10.    RMC is a company which provides bathroom deodorizing services to businesses and industries.

11.    Defendant R.M.C., was and is an eligible employer as that term is understood within the ADA and the FMLA.

12.    At all relevant times, Defendant Mitchell Lask ("Lask") was employed at R.M.C., as Sales Co-ordinator.

13.  Upon information and belief, Lask was the Plaintiff's supervisor from January 2005.

14.  Upon information and belief, Lask approved, adopted and /or executed adverse personnel actions against the Plaintiff after January 2005.

15.  At all relevant times, Defendant Harry Grassel ("Grassel") was employed at R.M.C., as Regional Sales Manager.

16.  Upon information and belief, Grassel was the Plaintiff's supervisor until January 2005.

17.  Upon information and belief, Grassel approved, adopted and /or executed adverse personnel actions against the Plaintiff before January 2005.

18.  At all relevant times, Defendant Elizabeth Weidelich ("Weidelich") was employed at R.M.C., as Head of Human Resources.

19.  Upon information and belief, Weidelich had authority to make personnel decisions and take employment actions regarding the terms and conditions of the Plaintiff's employment.

20.  At all times material to this complaint, Weidelich approved, ratified and adopted all adverse personnel actions against the Plaintiff.

(V) STATEMENT OF FACTS

21.  Mr. Wyllins is 48 years of age; his date of birth is January 18, 1959.

22.  At all relevant times, Plaintiff was an openly gay man.

23.  At all relevant times, Plaintiff has suffered with Acquired Immune Deficiency Syndrome ("AIDS"), and the consequences thereof, which include skin cancer (Kaposi's sarcoma), wasting syndrome, acute pneumothorax, and frequent and recurring bouts of pneumonia.

24.  As a result, the Plaintiff often looked very thin, pale, and gaunt. For a period of time he

suffered from two very noticeable cancerous lesions on his nose.

25. Plaintiff's medical conditions, in particular his AIDS, acute pneumothorax, skin cancer and recurring pneumonia, substantially limited one or more of his major life activities.

26. The Plaintiff's diagnosis of AIDS means that he is unable to father a child, should he wish to do so.

27. The Plaintiff has been hospitalized for his acute pneumothorax and recurrent pneumonia, thus he has periodically been unable to work.

28. The Plaintiff lives under the burden of knowing that his skin cancer could become systemic at any time, requiring him to undergo life saving treatment such as chemotherapy and radiation therapy.

29. The Plaintiff thus also lives with the constant fear of dying from his carcinoma.

30. The Plaintiff is on multiple medications.

31. The Plaintiff is under constant medical supervision.

32. Accordingly, Plaintiff is and was at all relevant times disabled as that term is understood under the ADA and the NYSHRL, had a record of such a disability and/or was perceived as being thus disabled.

33. Defendants hired Plaintiff as a part-time Services Technician in May 1999.

34. Plaintiff was promoted to the full-time position of Services Manager in or about January 2001.

35. The Plaintiff worked between 50 and 60 hours per week. Approximately twenty percent of the time the Plaintiff work on the day shift, and approximately 80 per cent of the time the Plaintiff worked on the night shift.

36. As the Services Manager, Plaintiff supervised three employees.

37. As the Services Manager, Plaintiff had his own 'route' with between 2800 and 3300 units under his supervision. A unit is a bathroom or a number of bathrooms housed in one specific location.

38. As the supervisor of up to 3300 units, Plaintiff managed the largest number of units ever given to any supervisor.

39. Plaintiff held this unique responsibility for approximately four years prior to his termination.

40. Plaintiff worked both from home and on-site at each of his units. His units were situated in New York City.

41. Plaintiff's on-site work included visiting the units under his care on a regular basis, checking that the deodorizing system was in good working order and liaising with the supervisor of the building which housed the units to discuss any problems.

42. Plaintiff's work at home included paperwork, following up new business leads, assigning commissions, and dealing with all aspects of customer relations.

43. Throughout Plaintiff's employment with Defendants he received compliments on his work from his supervisors, his fellow employees, and his clients, and generally met and/or exceeded defendant's legitimate job performance expectations.

44. Plaintiff received an annual pay raise in every year of his employment.

45. Plaintiff received a raise in his commission in every year of his employment.

46. On June 8, 2004, Plaintiff received his "Service Rep Performance Appraisal."

47. The Performance Appraisal was given to him by his direct supervisor Grassel.

48. This was the first and only Performance Appraisal that Plaintiff had ever received, in almost

5

49.  Of the ten indicators on the "Service Rep Performance Appraisal", Plaintiff was rated "Commendable" for one indicator, "Effective" for seven of the indicators, and "Needs Improvement" for two indicators.

50.  The next month, in July 2004, Plaintiff received a letter of congratulations and a certificate of merit, from Mr. Michael S. Coyner, the C.E.O., of the Defendant company, in recognition of, and congratulations for, five years of successful service with R.M.C.

51.  Upon information and belief, in July 2004, the Defendants R.M.C., hired Lask as a Sales Coordinator.

52.  In July of 2004, Plaintiff had gall bladder surgery.

53.  The Defendants had actual and/or constructive knowledge of his surgery.

54.  Following the surgery, Plaintiff's health began to decline. His weight dropped from 150 to 116 pounds.

55.  Three months later, in October 2004, Plaintiff was diagnosed with full blown Acquired Immune Deficiency Syndrome ("AIDS").

56.  Plaintiff weight loss was later attributed to "wasting syndrome." "Wasting syndrome is a common symptom of AIDS

57.  On October 30, 2004, Plaintiff was hospitalized for pneumonia for seven days. He was discharged on November 6, 2004.

58.  On November 15, 2004, Plaintiff was again hospitalized for pneumonia for seven days. He was discharged on November 22, 2004.

59.  On November 28, 2004, Plaintiff was hospitalized for a collapsed lung for five days. He was

five years of his employment with the Defendants.

6

discharged on December 3, 2004.

60. On December 7, 2004, Plaintiff provided to the Defendant's Human Resources Department a note of the same date from his doctor Stephen J. Bernstein, M.D., confirming that he had acute pneumothorax (collapsed lung).

61. Thus between October 30, 2004 and December 3, 2004, Plaintiff was hospitalized a total of three times.

62. Collapsed lung and recurring pneumonia are common symptom of AIDS.

63. The Defendants had actual and/or constructive knowledge of Plaintiff's hospitalizations between October 30, 2004 and December 3, 2004.

64. The Defendants had actual and/or constructive knowledge of the reasons for Plaintiff's hospitalizations between October 30, 2004 and December 3, 2004.

65. In or about January 2005, Lask became Plaintiff's supervisor.

66. Grassel continued to be directly involved with Plaintiff's work.

67. In January 2005, Plaintiff developed two skin lesions on his nose, which was diagnosed as Kaposi's sarcoma in February 2005, a form of skin cancer, and a known and common symptom of AIDS.

68. In or about January 2005, Lask, in an obvious manner, looked at the lesions on Plaintiff's nose and made an inquiring remark about the lesions. Lask's remarks embarrassed and caused the Plaintiff discomfort.

69. In or about January 2005, Lask asked Plaintiff whether he was taking any medications. Again, Lask's remarks embarrassed and caused the Plaintiff discomfort.

70. In or about January 2005, Lask asked Plaintiff why he was so thin and pale. Once again,

Lask's remarks embarrassed and caused the Plaintiff discomfort.

71. Despite his illness, Plaintiff was able to fulfill his work orders and meet his deadlines.

72. The Defendants did not suffer undue business hardship because of Plaintiff's disability.

73. On or about February 24, 2005, Plaintiff had a telephone conversation with Grassel to discuss a complaint which had recently arisen with the Sanor units in two buildings owned by a customer named BMS. There had been problems with the wicks of the Sanor units drying up and failing to function properly.

74. Grassel advised Plaintiff that a new product called "wick clips" had been tested in January 2005 and would correct the flow problem in the Sanor units.

75. As a result of his conversation with Grassel, on the same day, February 24, 2005, Plaintiff ordered the wick clips. On February 28, 2005, Plaintiff received a shipment of wick clips which he planned to install in the problematic Sanor units to correct the flow problem.

76. According to his job description, the Plaintiff had 30 days to correct any problems, which could be extended a further 30 days.

77. The Plaintiff's employment was terminated before he had the opportunity to install the wick clips and correct the problem with the Sanor units.

78. At the end of February 2005, Plaintiff was informed by his doctor that he might require chemotherapy for his advancing skin carcinoma.

79. On March 2, 2005, Plaintiff was too ill to attend work.

80. On March 2, 2005, Plaintiff visited his doctor, Dr. Stephen Bernstein, who diagnosed bronchitis, fever and shortness of breath, and noted his history of recurring pneumonia. Dr. Bernstein prescribed medication and bed rest, and made three follow up appointments for

6

the Plaintiff to attend.

81. On March 2, 2005, Plaintiff telephoned Grassel and told him that he was sick with pneumonia, and that he would not be attending work.

82. On March 2, 2005, Plaintiff telephoned Lask and told him that he was sick with pneumonia, and that he would not be attending work.

83. From March 2, 2005, until his termination on March 10, 2005, Plaintiff was on sick leave.

84. Each day that Plaintiff was out on sick leave he spoke to either Grassel or to Lask or to Thuy Tran in Human Resources at R.M.C., to inform them that he was sick and that he would not be attending work.

85. On Friday, March 4, 2005, Plaintiff third day out sick, he telephoned Human Resources at R.M.C., and spoke to Thuy Tran.

86. The Plaintiff told Thuy Tran that he was sick with pneumonia.

87. The Plaintiff asked Thuy Tran to send him a disability application form to complete.

88. Thuy Tran informed Plaintiff that he had to miss work for five consecutive days in order to participate in the disability program.

89. Thuy Tran advised Plaintiff to request a disability application form when he had been out sick for five consecutive days.

90. On or about Friday, March 4, 2005, Plaintiff told Grassel that he was applying for disability.

91. On Tuesday, March 8, 2005, Plaintiff fifth day out sick, he telephoned Human Resources at R.M.C., and again spoke to Thuy Tran.

92. Plaintiff again asked her to send him a disability application form.

93. On Tuesday, March 8, 2005, Plaintiff received a disability application form from the

Defendants by way of fax.

94.   On or about Tuesday, March 8, 2005, Plaintiff told Lask that he was applying for short term
      disability. Lask responded, "O.K.".

95.   On March 10, 2005, Lask Plaintiff at home while he was out sick, and informed him that his
      job was terminated.

96.   Lask, as agent of the Defendant, gave no reason for the termination. He simply read a letter
      of termination out loud to Plaintiff over the telephone.

97.   Defendant's letter of termination was dated March 3, 2005, and signed by Elizabeth A.
      Gates. A copy is annexed.

98.   The Plaintiff was shocked and extremely upset to be terminated from his employment after
      six exemplary years of service.

99.   At no time was the Plaintiff given any prior oral or written warning.

100.  Each day that Plaintiff was out on sick leave, from March 2, 2005 until March 10, 2005, he
      spoke to either Grassel or to Thuy Tran, to inform them that he was sick and that
      he would not be attending work.

101.  On March 14, 2005, the Plaintiff received the letter of termination in the mail.

102.  The defendants Lask, Grassel and Weidelich were and are employees, agents and servants of
      the defendant R.M.C.

103.  The defendants Lask, Grassel and Weidelich acted within the scope of their employment, in
      furthering the business interests of R.M.C., and R.M.C., instigated, controlled, directed or
      ratified Lask, Grassel and Weidelich's acts as alleged here.

104.  Defendants committed, were aware of, authorized and/or condoned the discriminatory and

105.    The actions complained of here were committed intentionally by Defendants and constitute a continuing policy and practice of discrimination.

106.    Defendants terminated Plaintiff employment because of his disability, his perceived disability, and/or because he had availed himself of FMLA-protected leave.

107.    Plaintiff was able to perform the essential functions of his job with the reasonable accommodation that he take short leave periods to recover from his recent illnesses.

108.    Defendants actions were motivated because of Plaintiff disability, his perceived disability, and/or because he took FMLA-protected leave.

109.    Defendants had actual and/or constructive notice that Plaintiff was gay.

110.    Lask had actual and/or constructive notice that Plaintiff was a gay man because Lask had discussed Plaintiff's homosexuality with other work colleagues.

111.    Grassel had actual and/or constructive notice that Plaintiff was a gay man because the Plaintiff told him personally.

112.    Defendants had actual and/or constructive notice that Plaintiff had AIDS.

113.    Defendants knew Plaintiff was a gay man, that he had lost a considerable amount of weight, that he had two large and unattractive lesions on his nose, that he had recurring pneumonia and a collapsed lung, that he was taking large quantities of medication and had to be hospitalized on multiple occasions.

114.    AIDS is considered a disability under the ADA.

115.    Defendants had actual and/or constructive notice that Plaintiff had applied for disability and wished to take a leave of absence.

11

116.   On or about March 6, 2005, Lask had actual and or constructive notice that that the Plaintiff was applying for short term disability because Plaintiff told him personally.

117.   On or about March 6, 2005, Grassel had actual and/or constructive notice that Plaintiff was applying for short term disability because Plaintiff told him personally.

118.   On or about March 2, 2005, Weidelich had actual and/or constructive knowledge that the Plaintiff intended to apply for short term disability because Thuy Tran (Corporate Benefits Administrator) informed her.

119.   Defendant Lask controlled in whole or in part Plaintiff's ability to take a leave of absence, he took the decision to recommend the Plaintiff for termination and he is therefore individually liable.

120.   Defendant Grassel controlled in whole or in part Plaintiff's ability to take a leave of absence, he took the decision to recommend the Plaintiff for termination and he is therefore individually liable.

121.   Defendant Weidelich controlled in whole or in part Plaintiff's ability to take a leave of absence, she took the decision to terminate Plaintiff and she is therefore individually liable.

122.   Defendants' unlawful action have caused Plaintiff enormous financial hardship and emotional distress.

123.   Because Defendants' discrimination of Plaintiff as described here was done with oppression, malice, and/or a reckless or conscious indifference to Plaintiff's protected rights, Plaintiff seeks punitive damages.

12

## (VI) STATEMENT OF CLAIMS

## COUNT ONE: ADA

124. Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 123 of this Complaint, with the same force and effect, as if set forth at length here.

125. Plaintiff was an eligible employee as that term is understood within the ADA.

126. Defendant was a covered employer as that term is understood within the ADA.

127. The Plaintiff had a disability as defined under the ADA.

128. The Plaintiff requested a reasonable accommodation as defined under the ADA.

129. In terminating Plaintiff's employment for his having a disability, and not reinstating him to his position, Defendants intentionally violated the ADA, and are thus liable.

130. In violation of section 42 U.S.C. §§ 12101 et seq. of the ADA, Defendants did intentionally discriminate against Plaintiff Alan David Wyllins on the basis of his disability, perceived disability and/or record of disability in violation of the ADA.

131. This violation of section 42 U.S.C. §§ 12101 et seq. of the ADA, by the Defendants justifies an award to the Plaintiff of back pay, front pay, interest, benefits, compensatory damages, punitive damages, reasonable attorney's fees, costs and expenses.

132. Plaintiff has satisfied all conditions required under the ADA.

133. Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding Three Million dollars.

## COUNT TWO: FMLA

134. Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through

13

133 of this Complaint, with the same force and effect, as if set forth at length here.

135. Plaintiff was an eligible employee as that term is understood within the FMLA.

136. Defendant was a covered employer as that term is understood within the FMLA.

137. The Plaintiff was entitled to leave under the FMLA.

138. The Plaintiff had a serious medical condition as defined under the FMLA.

139. The Plaintiff gave appropriate notice to the Defendant of his intention to take FMLA-protected leave.

140. In terminating Plaintiff's employment for his having taken FMLA-protected leave for a serious medical condition, and not reinstating him to his position, Defendants intentionally violated the FMLA by interfering with, restraining and/or denying Plaintiff's attempts to exercise his rights under the FMLA, and are thus liable.

141. Defendants willfully and intentionally violated the FMLA.

142. Defendants controlled in whole or in part Plaintiff's ability to take leaves of absence and took the decision to terminate Plaintiff's employment and thus are liable.

143. In violation of 29 U.S.C.S. § 2601 et seq. of the FMLA, Defendants did intentionally discriminated against Plaintiff Alan David Wyllins on the basis of his disability, perceived disability and/or record of disability in violation of the FMLA.

144. This violation of 29 U.S.C.S. § 2601 et seq. of the FMLA, by the Defendants justifies an award to the Plaintiff of back pay, front pay, interest, compensatory damages, punitive damages, reasonable attorney's fees, costs and expenses.

145. Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding Three Million dollars.

## COUNT THREE: NYSHRL

146. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 145 of this Complaint with the same force and effect, as if set forth at length here.

147. Plaintiff was an eligible employee as that term is understood within the NYSHRL.

148. Defendant was a covered employer as that term is understood within the NYSHRL.

149. The Plaintiff had a disability as defined under the NYSHRL.

150. The Plaintiff requested a reasonable accommodation as defined under the NYSHRL.

151. In terminating Plaintiff's employment for his having a disability, and not reinstating him to his position, Defendants intentionally violated the NYSHRL, and are thus liable.

152. By their actions and in violation of the NYSHRL, §296(1) (a) et seq., of the New York Executive Law, Article 15, Defendants did discriminate against the Plaintiff Alan David Wyllins by terminating his employment because of his disability/perceived disability, justifying an award of back pay, front pay, compensatory damages, and litigation costs and expenses.

153. By their actions stated here, Defendant caused the Plaintiff great pain and suffering and damaged him in an amount as yet undetermined, but exceeding $1,000,000.

## COUNT FOUR: NEW YORK CITY ADMINISTRATIVE CODE

154. Plaintiffs repeats and re-allege each and every allegation contained in paragraphs 1 through 153 of this Complaint, with the same force and effect as if set forth at length here.

155. Plaintiff was an eligible employee as that term is understood within the New York City

156.  Defendant was a covered employer as that term is understood within the New York City Administrative Code.

157.  The Plaintiff had a disability as defined under the New York City Administrative Code.

158.  The Plaintiff requested a reasonable accommodation as defined under the New York City Administrative Code.

159.  In terminating Plaintiff's employment for his having a disability, and not reinstating him to his position, Defendants intentionally violated the New York City Administrative Code, and are thus liable.

160.  By their actions and in violation of § 8-107(1)(a) et seq., of the New York City Administrative Code, Defendant R.M.C., did discriminate against the Plaintiff Alan David Wyllins by terminating his employment because of his disability/perceived disability, justifying an award of back pay, front pay, compensatory damages, reasonable attorney's fees, costs and expenses.

161.  By their actions stated here, Defendant caused the Plaintiff great pain and suffering and damaged him in an amount as yet undetermined, but exceeding $1,000,000.

### (VII) EXHAUSTION OF ADMINISTRATIVE REMEDIES

162.  On May 2, 2007, the Equal Employment Opportunity Commission's New York District Office ("E.E.O.C.") issued Plaintiff with a right to sue. A copy is annexed.

163.  In conformation with the law the Plaintiff has filed this action subsequent to the expiration of ninety days (90) from the date of receiving his right to sue letter from the EEOC, and

16

within two years after the Defendants willfully violated Plaintiff's rights under the ADA.

## (VIII) PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter a judgment against Defendants as follows:

**A.    Count One: ADA**

(1) Declare that the employment practices complained of by the Plaintiff in this complaint are unlawful in that they violate section 42 U.S.C. §§ 12101 et seq. of the ADA;

(2) order each of the Defendants to jointly and severally make the Plaintiff whole by compensating him with back pay, front pay, loss of future earnings, lost benefits, and all other necessary monetary and non-monetary benefits, all in amounts to be proved at trial with interest, from date of injury pursuant to section 42 U.S.C. §§ 12101 et seq. of the ADA for each statutory violation found;

(3) order each of the Defendants to jointly and severally pay the Plaintiff compensatory damages in an amount not less than Three Million Dollars, with interest from the date of injury, pursuant to section 42 U.S.C. §§ 12101 et seq. of the ADA for each violation found;

(4) order each of the Defendants to jointly and severally pay the Plaintiff's litigation costs, expenses and attorneys' fees as provided by section 42 U.S.C. §§ 12101 et seq. of the ADA for each violation found; and

(5) order each of the Defendants to jointly and severally pay punitive

damages to the Plaintiff in the amount not less than Three Million Dollars for

each violation found under section 42 U.S.C. §§ 12101 et seq. of the ADA.

**B.    Count Two: FMLA**

(1) Declare that the employment practices complained of by the Plaintiff in

this complaint are unlawful in that they violate 29 U.S.C.S. § 2601 et seq. of

the FMLA;

(2) order each of the Defendants to jointly and severally make the Plaintiff

whole by compensating him with back pay, front pay, loss of future earnings,

lost benefits, and all other necessary monetary and non-monetary benefits, all

in amounts to be proved at trial with interest, from date of injury pursuant to

29 U.S.C.S. § 2601 et seq. of the FMLA for each statutory violation found;

(3) order each of the Defendants to jointly and severally pay the Plaintiff

compensatory damages in an amount not less than Three Million Dollars,

with interest from the date of injury, pursuant to 29 U.S.C.S. § 2601 et seq. of

the FMLA for each violation found;

(4) order each of the Defendants to jointly and severally pay the Plaintiff's

litigation costs, expenses and attorneys' fees as provided by 29 U.S.C.S. §

2601 et seq. of the FMLA for each violation found; and

(5) order each of the Defendants to jointly and severally pay punitive

damages to the Plaintiff in the amount not less than Three Million Dollars for

18

each violation found under 29 U.S.C.S. § 2601 et seq. of the FMLA.

**C.      Count Three: New York State Human Rights Law**

(1) Declare that the employment practices complained of by the Plaintiff in
this complaint are unlawful in that they violate Article 15 of the Executive
Law of the State of New York;

(2) order each of the Defendants to jointly and severally make the Plaintiff
whole by compensating him with back pay, front pay, loss of future earnings,
lost benefits, and all other necessary monetary and non-monetary benefits, all
in amounts to be proved at trial with interest, from date of injury pursuant to
Article 15 of the Executive Law of the State of New York for each statutory
violation found;

(3) order each of the Defendants to jointly and severally pay the Plaintiff
compensatory damages in an amount not less than Three Million Dollars,
with interest from the date of injury, pursuant to Article 15 of the Executive
Law of the State of New York for each violation found;

(4) order each of the Defendants to jointly and severally pay the Plaintiff's
litigation costs and expenses as provided by Article 15 of the Executive Law
of the State of New York for each violation found under said Article.

**D.      Count Four: New York City Administrative Code**

(1)      declare that the employment practices complained of by Plaintiff in this

19

20

complaint are unlawful in that they violate §§8-107 et seq. of Administrative Code of New York;

(2)    order each of the Defendants to jointly and severally make the Plaintiff whole by compensating him with back pay, front pay, and loss of future earnings, lost benefits, and other monetary and non-monetary benefits, including other special damages, all in amounts to be proved at trial with interest from date of injury pursuant to §§8-107 et seq. of Administrative Code of New York for each statutory violation found under its authority;

(3)    order each of the Defendants to jointly and severally pay the Plaintiff's compensatory damages in the amount not less than Three Million Dollars, with interest from the date of injury, pursuant to §§8-107 et seq. of Administrative Code of New York for each violation found under its authority;

(4)    order each Defendant to jointly and severally pay the Plaintiff's litigation costs, expenses and attorneys' fees as provided §§8-107 et seq. of Administrative Code of New York for each violation found under its authority; and

(5)    order each of the Defendants to jointly and severally pay punitive damages to the Plaintiff in the amount of Three Million Dollars pursuant to §§8-107 et seq. of Administrative Code of New York, for each violation found under its authority; and

E.    Granting such other and further relief as the Court deems necessary, just and proper.

## (IX) JURY DEMAND

Pursuant to applicable state law, Plaintiffs demand a trial by jury in this action.

Dated: Yonkers, New York
27 July, 2007

Respectfully submitted,

_____

Anne Donnelly Bush, Esq.
*Attorney for the Plaintiff*
1085 Warburton Avenue, Ste. 824
Yonkers, New York 10701
Tel. & Fax: (212) 803 5470

21

21

E.    Granting such other and further relief as the Court deems necessary, just and proper.

$$\overline{\text{(IX) JURY DEMAND}}$$

Pursuant to applicable state law, Plaintiffs demand a trial by jury in this action.

Dated: Yonkers, New York
27 July, 2007

Respectfully submitted,

_[signature]_

Anne Donnelly Bush, Esq.
***Attorney for the Plaintiff***
1085 Warburton Avenue, Ste. 824
Yonkers, New York 10701
Tel. & Fax: (212) 803 5470



**RMC**
*Rochester Midland Corporation*

March 3, 2005

Alan D. Wyllins
1471 Second Ave. #7
New York, NY 10021

Dear Alan;

Your termination has been processed. Your last day in employment status is Thursday, March 3, 2005. You will be paid through March 3, 2005.

Your medical coverage will end on March 15, 2005 and your dental coverage will end on March 31. You are eligible under Cobra Law to continue your coverage at the group rate at your own expense. You will receive a letter from Thuy Tran concerning your Cobra eligibility and your Fortis Life Insurance coverage.

Please be sure and call anyone in Human Resources if you have any questions or need assistance.

Sincerely,

Elizabeth A. Gates
Employment Manager

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

EEOC Form 161-B (3/98)

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Alan Wyllins<br>1471 2nd Avenue, Apt #7<br>New York, NY 10021 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 160-2006-00247 | **Robert L. Sanders,**<br>Area Office Director | **(617) 565-3200** |

NOTICE TO THE PERSON AGGRIEVED:    *(See also the additional information enclosed with this form.)*

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☒ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days from the day the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice**. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Tibba L. Sanders* (signature)                MAY 0 2 2007
_____                  _____
**Robert L. Sanders,**                        (Date Mailed)
**Area Office Director**

Enclosure(s)

| cc: | Rochester Midland Corporation<br>c/o Daniel J. Moore, Esq.<br>Harris Beach PLLC<br>99 Garnsey Road<br>Pittsford, NY 14534 | Alan Wyllins<br>c/o Anne Donnelly Bush, Esq.<br>Attorney at Law<br>1085 Warburton Avenue, Suite 824<br>New York, NY 10701 |
|---|---|---|